IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM CLARK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-0002-CG-B |
| | ) | |
| AMERICAN MARINE & SALVAGE, | ) | |
| LLC, | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant American Marine & Salvage,

LLC ("AMS")'s motion for summary judgment as to three claims brought by Plaintiff

William Clark ("Clark") under the Jones Act, 46 U.S.C. § 30104, and the general

maritime law of the United States (Doc. 39), Plaintiff's opposition thereto (Doc. 44)

and Defendant's reply (Doc. 46).  For the reasons stated below, Defendant's motion

is due to be **GRANTED**.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a pair of incidents during which Clark sustained

injuries while he was employed[1] by AMS.  AMS provides commercial diving,

---

[1]    Defendant denies that Clark was an AMS employee when he was injured, arguing instead that
he was an independent contractor.  Doc. 40 at 7.  Defendant also denies responsibility for Plaintiff's
second alleged injury because Defendant had leased the AMS barge to a third-party, Hepaco, just
prior and Hepaco had assumed operation, management and control of the job site.  Id. at 15, 21;
(Doc. 46 at 14).  Plaintiff contests Defendant's characterization of the facts, arguing that he was an
employee who worked for AMS during his entire tenure, including when he sustained his second

welding, and repair services to the marine industry of Mobile, Alabama.  (Doc. 40 at

5; Doc. 42-1 at 2).  Prior to working for AMS, Clark was employed as a commercial

diver by Commercial Diving Services "from approximately August 2006 through

2010."[2]  (Doc. 44 at 4).  Clark began working for AMS on January 5, 2010 for a

salary of $800 per week. (Id. at 3-4).  Clark's supervisor was Aubrey Roney

("Roney"), the owner of AMS. (Id. at 4-5).  At AMS, Clark's job duties included

assisting with company billing and performing commercial dive operations and

other related maritime activities. (Id.; Doc 45-1 at 3).  Clark's primary responsibility

was to repair and maintain the AMS work barge.  (Doc. 44 at 5; Doc. 45-1 at 3).

During his approximately five-months at AMS, Clark worked a total of 768.5

hours.[3] (Doc. 44 at 6; Doc. 45-2 at 75-77; Doc. 46 at 2).  According to Clark's daily

---

injury.  (Doc. 44 at 4-5, 7-8, 12-13).  At this summary judgment stage, the Court assumes the facts in the light most favorable to the non-movant, and therefore, proceeds on the basis that Clark was an AMS employee during the five-month term of his employment.

[2]   Since Plaintiff began working for AMS at the beginning of 2010, it appears that Plaintiff intended to say that he worked for CDS through 2009.

[3]   Clark qualifies this number by arguing that it is both over- and under-inclusive, inasmuch as it includes an unquantified amount of time spent traveling to and from off-job sites but does not include 85.5 hours, "the majority of which were [sic] performed on the AMS work barge in order to build the Kerr McGee dock, further 'seaman work' Clark performed while employed by AMS."  (Doc. 44 at 6).  Ultimately however, as explained below, Plaintiff's claims fail notwithstanding any adjustment that he argues may be due.  Thus, the Court does not consider such work in reaching its conclusion, but even assuming the 85.5 hours were relevant, such work does not constitute "seaman" work.  See O'Hara v. Weeks Marine, Inc., 294 F.3d 55 (2d Cir. 2002) (concluding that an employee who repairs a pier from a barge secured to that land-based object was not regularly exposed to the perils of the sea); see also Baucom v. Sisco Stevedoring, LLC, 2008 WL 313174, at *6 n.9 (S.D. Ala. Feb. 1, 2008) (discussing O'Hara).

work logs,[4] he spent 159 hours (or 20.7% of his time at AMS) repairing and maintaining the AMS work barge while it was docked behind Mr. Roney's house on Alligator Bayou.[5]  (Doc. 45-2 at 73; Doc. 46 at 2).  Specifically, Clark built hatches to secure the deck, built a winch system for boom support, rebuilt the main boom, performed welding work, hung and worked on the outboard motor, and worked on the barge's steering capabilities.  (Doc. 45-1 at 3, 19-21, 40-51, 55-61, 58, 60-63, 68-71; Doc. 45-2 at 2, 5, 9-12, 16-17, 51, 54).  Clark spent 34.5 hours (4.5% of his time at AMS) repairing Nathan Friedlander's dock. (Doc. 40 at 10; Doc. 44 at 5).  Clark testified that the Friedlander dock job involved welding, replacing rotted boards and building a small finger pier. (Doc. 45-3 at 9).  In order to get to Nathan Friedlander's dock, Roney navigated the AMS work barge approximately four miles from its location in his backyard.  (Doc. 44 at 5).  Clark was not present on the AMS barge while it was navigated to and from the Friedlander dock.  (Doc. 42-2 at 11).  Clark also spent 35.5 hours (4.6% of his time) doing commercial dive work off the AMS dive boat.  (Doc. 44 at 5).  Clark has not characterized or described his activity regarding the remaining 539.5 hours.

On or about March 11, 2010, Clark and Roney took the AMS dive boat out in Biloxi Bay for a dive job that AMS was hired to perform.  (Id. at 7).  Roney instructed Clark to dive and "mark the corners of a sunken barge." (Id.)  The boat

---

[4]   Plaintiff and Defendant both rely on Clark's time sheets and submit them as evidence in support of their briefs.  Thus, the Court presumes the accuracy of such time sheets and the hours and job descriptions recorded.

[5]   Alligator Bayou is on Dog River, a navigable waterway near Theodore, Alabama, that flows into Mobile Bay. (Doc. 40 at 11; Doc. 44 at 5).

was not equipped with a ladder so when the dive was completed, Roney pulled

Clark out of the water, and this "pull and lift maneuver" caused injuries to

Plaintiff's "back, shoulder, elbow, arm, and other parts of his body."  (Id. at 3, 7).

Approximately two months later, on or about May 10, 2010, while working on the

AMS work barge building a dock near Kerr McGee Yard, (id. at 7), Plaintiff

sustained "additional injuries to his neck, back, shoulder, arms, elbow, and other

parts of his body," (id. at 3), when he was instructed by Roney to hold and then push

a heavy piling[6] into the ground, (id. at 13).

Plaintiff filed this action seeking relief under the Jones Act and general

maritime law, alleging injuries as a result of Defendant's alleged negligence.

Complaint, (Doc. 1 at 2-3).  Plaintiff brings three claims: (1) negligence under the

Jones Act; (2) unseaworthiness under the general maritime law of the United

States; and (3) maintenance and cure.  The deadline for amending the pleadings

was July 1, 2011, discovery in this matter closed on October 31, 2011, and the

deadline for dispositive motions was November 14, 2011.  (Docs. 26, 38).  On

November 11, 2011, Defendant moved for summary judgment, asserting that,

because Smith lacked status as a seaman while affiliated with AMS, he lacks

standing to bring his claims of negligence under the Jones Act or under general

maritime law for unseaworthiness or for maintenance and cure and that the Court

therefore lacks subject matter jurisdiction over Plaintiff's claims.  (Doc. 39 at 1).

---

[6]  While Plaintiff's Reply motion calls the apparatus a "pile-on," his deposition testimony makes clear that he was injured while moving into place the easterly piling at the Kerr McGee Dock. (Doc. 45-3 at 15, 17).

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See id. at 251-52. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the

inferences arising from undisputed facts, then [a court] should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 F. App'x. 867, 870 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(e)(2)). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## ANALYSIS

### A.  Relevant Legal Standard

The Jones Act provides a cause of action in negligence to "any seaman" who is injured during "the course of his employment."  46 U.S.C. § 30104; Larue v. Joann M., 73 F.3d 325, 327 (11th Cir. 1996).  The burden of establishing seaman status falls on the party seeking its benefits.  See, e.g., Billings v. Chevron, U.S.A., Inc., 618 F.2d 1108, 1109 (5th Cir. 1980) ("In order to establish Jones Act jurisdiction, plaintiff must show that at the time of his injury he was a seaman on a vessel . . . .").

The Supreme Court considered the question of who is a seaman in a trilogy of decisions in the 1990s: McDermott International Inc. v. Wilander, 498 U.S. 337 (1991); Chandris, Inc. v. Latsis, 515 U.S. 347 (1995); and Harbor Tug & Barge Co. v. Papai, 520 U.S. 548 (1997).  In Chandris, the Court articulated a two-part test:  "[1] an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission and [2] a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and its nature."  Chandris, 515 U.S. at 368 (citations and internal punctuation omitted).

The first part of the <u>Chandris</u> test is very broad, and "a necessary element of the connection is that a seaman perform the work of a vessel."[7]  <u>Wilander</u>, 498 U.S. at 355.  "The existence of a vessel is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status."  <u>Holmes v. Atl. Sounding Co.</u>, 437 F.3d 441, 446 (5th Cir. 2006) (footnote and internal punctuation omitted).  In <u>Wilander</u>, the Court explained that "[i]t is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work."  498 U.S. at 355.

The second prong of the <u>Chandris</u> test requires a substantial connection – both in terms of duration and nature – to a vessel in navigation.  With respect to the durational inquiry, as a general rule, a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  <u>Id.</u>  at 371.  "This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases."  <u>Id.</u>  The nature prong requires an examination of the employee's activities and duties to determine whether he is land-based or sea-based.  <u>See</u> <u>Papai</u>, 520 U.S. at 555.  The purpose of this element is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore, whose employment does not regularly expose

---

[7]    In <u>Papai</u>, 520 U.S. at 556, the Supreme Court clarified that "[t]here is no insurmountable difficulty . . . in finding seaman status based on the employee's relationship to several specific vessels—an identifiable fleet—as opposed to a single one." (internal quotation marks omitted).

them to the perils of the sea." Chandris, 515 U.S. at 368. "For the substantial

connection requirement to serve its purpose, the inquiry into the nature of the

employee's connection to the vessel must concentrate on whether the employee's

duties take him to sea." Papai, 520 U.S. at 555.

Whether an employee qualifies as a seaman "is a mixed question of law and

fact." Id. at 554.   "[T]he question of seaman status should only be removed from

the trier of fact (by summary judgment or directed verdict) in rare

circumstances. . . ." Hurst v. Pilings & Structures, Inc., 896 F.2d 504, 506 (11th Cir.

1990) (quoting Bernard v. Binnings Constr. Co., 741 F.2d 824, 827 (5th Cir. 1984)

(internal quotation marks omitted)).   However, "where undisputed facts reveal that

a maritime worker has a clearly inadequate temporal connection to vessels in

navigation, the court may take the question from the jury by granting summary

judgment or a directed verdict." Chandris, 515 U.S. at 371.   Summary judgment on

the question of seaman status "is mandated where the facts and the law will

reasonably support only one conclusion." Id. (citing Wilander, 498 U.S. at 356).

### B.  Seaman Status Under the Jones Act

The parties agree that Plaintiff worked a total of 768.5 hours for Defendant,

34.5 hours of which were spent repairing Nathan Friedlander's dock, and 35.5 hours

of which were spent performing commercial dive work.   For purposes of the instant

petition, Defendant concedes that the 70 hours of dock and dive work are "seaman"

hours under Chandris.   Doc. 40 at 10 & n.22.   Plaintiff argues that the 159 hours he

spent working on the AMS work barge while it was docked behind Roney's house

9

also qualify as Jones Act work.  Doc. 44 at 6.  However, Defendant vigorously denies

that any of the 159 hours constitutes seaman hours.  Doc. 46 at 11-12.

It is clear that 70 out of 768.5 hours (or 9.1%) is insufficient to meet the

substantial duration prong in Chandris.  However, 229 hours (or 29.7%) is not

clearly inadequate. See, e.g., Eckert v. United States, 232 F. Supp. 2d 1312, 1324

(S.D. Fla. 2002) ("17-25% at-sea time period is not 'clearly inadequate.'" (quoting

Chandris, 515 U.S. at 371)).  Thus, the question presented is whether a material

issue of fact exists as to the character of these 159 hours with respect to the Jones

Act.

### 1.  Vessel-Status of the AMS Barge

Though "[t]he existence of a vessel is a fundamental prerequisite to Jones Act

jurisdiction," Holmes, 437 F.3d at 446 (internal quotation marks omitted), the

parties did not devote much ink to briefing this issue.  Nevertheless, the Court will

wade into these waters, which have been charted by Congress and the courts.

The statutory definition of vessel is broad, covering "every description of

watercraft or other artificial contrivance used, or capable of being used, as a means

of transportation on water."  1 U.S.C. § 3 (2006).  In Stewart v. Dutra Construction

Co., 543 U.S. 481 (2005), the Supreme Court set forth the following five-part test for

determining whether a watercraft is a vessel under the Jones Act:

> (1) the watercraft need only be "used, or capable of being used, as a
> means of transportation on water to qualify as a vessel";
>
> (2) there is no requirement "that a watercraft be used primarily for
> that purpose";

(3) "a watercraft need not be in motion to qualify as a vessel," such that "a watercraft does not pass in and out of Jones Act coverage depending on whether it was moving at the time of the accident";

(4) "structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time"; and

(5) "the question remains in all cases whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one."

Stewart, 543 U.S. at 495-96; see also City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length, 649 F.3d 1259, 1269 (11th Cir. 2011) ("the status of 'vessel' does not depend in any way on either the purpose for which the craft was constructed or its intended use" (citation omitted)).

Based on Stewart and its progeny, there is no reasonable dispute regarding the vessel-status of the AMS barge.  The undisputed evidence reflects that, from January to May 2010, not only was the barge capable of being used as a means of transportation on water, but also that the barge was actually used as a means of transportation on water because it was "navigated" by Roney.[8]  See The Alabama, 19 F. 544, 546 (S.D. Ala. 1884) (noting that vessels possess "mobility and [the] capacity to navigate," as distinct from fixed structures like wharves, drydocks, and bridges).  Specifically, the AMS barge traveled eight miles to and from Roney's

---

[8]     Q [Mr. Thompson]: Where had the barge been before it got to Friedlander's pier?
       A [William Clark]: In Aubrey's backyard.
       Q:  How did it get there?
       A:  Aubrey piloted it.

(Doc. 42-2 at 11 (emphasis added)).

backyard in Theodore, Alabama, to the Friedlander dock and an unidentified distance[9] to the Kerr McGee Ship Yard.  Though Defendant argues that the barge was ashore in Roney's backyard for a period of time while he performed certain repairs, no evidence has been presented that the barge was taken out of service or rendered practically incapable of maritime transportation during the first five months of 2010.  See Chandris, 515 U.S. at 373 ("Under our precedent and the law prevailing in the Circuits, it is generally accepted that a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside, even when the vessel is undergoing repairs. (emphasis added) (internal punctuation and citations omitted)).  In any event, even "vessels undergoing repairs or spending a relatively short period of time in drydock are still considered to be "in navigation." Id. at 374.  Though the AMS barge was intermittently repaired between January and April 2010, (Doc. 45-8 at 3), the total disruption was not significant enough to render the vessel out of navigation.  Compare id. at 374-75 (6-month repair project did not take vessel out of navigation) with McKinley v. All Alaskan Seafoods, Inc., 980 F.2d 567, 570 (9th Cir. 1992) (17-month long project involving major structural changes removed vessel from navigation).  Accordingly, construing the facts in the light most favorable to Plaintiff, the Court must conclude that the AMS barge was a vessel for Jones Act purposes at all times relevant to this action.

---

[9]    Neither Plaintiff nor Defendant has offered information on how far the barge travelled on its path to the Kerr McGee Ship Yard.

2.  Chandris – Part I

Having presented sufficient evidence that the AMS barge qualifies as a

vessel, Plaintiff must next show that his duties "contributed to the function of the

vessel or to the accomplishment of the mission."  Chandris, 515 U.S. at 371.  "This

threshold requirement is very broad: 'All who work at sea in the service of a ship'

are eligible for seaman status."  Chandris, 515 U.S. at 368 (quoting Wilander, 498

U.S. at 354).  A seaman need not "aid in navigation or contribute to the

transportation of the vessel, but a seaman must be doing the ship's work."

Wilander, 498 U.S. at 355.

Examining Clark's overall work duties, the Court finds that his efforts

contributed to both the function and the accomplishment of the mission of the AMS

vessels[10] – the barge and dive boat.  Though it is not entirely clear what the "ship's

work" was in the case at bar, the AMS barge appears to have been used to transport

construction materials, such as lumber and pilings to job sites and as a platform

from which Plaintiff, and others, performed dock repairs and various maritime

activities.  The overall mission of the AMS fleet was to provide dive, construction,

and repair services in Mobile, Alabama.  Oddly, Plaintiff himself has offered very

minimal evidence of the type of repair work he performed on the barge, but it is

clear that his 159 hours of ongoing repair and maintenance work contributed to the

barge's functionality.  The parties do not dispute that Clark outfitted the barge with

---

[10]   For purposes of summary judgment, Defendant has conceded that the dive boat is a "vessel" and
that all work Plaintiff performed from there was "seaman" work.  Doc. 46 at 3-4, 11.  Thus, the Court
will only discuss the application of Chandris to the AMS barge.

an outboard motor, built a winch system to support the boom, rebuilt the main boom, hung and repaired the outboard motor, and worked on the barge's steering capabilities. These improvements undoubtedly contributed to both the function and the accomplishment of the mission of the AMS vessels. See Loyd v. Ram Indus. Inc., 64 F. Supp. 2d 1235, 1238 (S.D. Ala. 1999) (maintenance work contributed to function and mission of the dredge vessel). Therefore, the Court finds that Plaintiff has satisfied the first part of the Chandris test.

### 3.   Chandris – Part II

Plaintiff does not meet the second prong of Chandris, which requires that a "seaman . . . have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and its nature." Chandris, 515 U.S. at 367. Without citing a single case in support, Plaintiff posits that his 159 hours of dockside repair work on the AMS barge bore a substantial connection to a vessel in navigation. However, it is undisputed that Clark's barge repair work was not of a seagoing nature, and Plaintiff, therefore, has failed to demonstrate that his employment regularly exposed him to the perils of the sea.

To be a seaman, one must perform seafaring work even though he need not contribute to the actual transportation of a vessel. See Wilander, 498 U.S. at 355. The record establishes that the preponderance of Plaintiff's work for AMS was not of a seafaring nature. Plaintiff ate all his meals ashore and never slept aboard the barge. He went home every night and drove to and from his home to job sites or the AMS dive shop. Plaintiff's lack of a substantial connection to a "vessel in

navigation" is made all the more clear by the fact that on the two occasions that the AMS barge was piloted from Roney's backyard to another location, Plaintiff was not onboard.  Other courts have denied seaman status on more compelling facts.  See O'Hara, 294 F.3d 55; Collier v. Ingram Barge Co., 2010 WL 145108 (W.D. Ky. Jan. 8, 2010); Schultz v. La. Dock Co., 94 F. Supp. 2d 746, 750 (E.D. La. 2000).

Additionally, there is no evidence in the record to suggest that, during the time that Plaintiff repaired the AMS barge, he rode on any other vessel.  This case, therefore, is easily distinguished from those cases in which an employee who worked on a vessel docked near shore was found to have seaman status.

For instance, in Southwest Marine, Inc. v. Gizoni, 502 U.S. 81 (1991), the Supreme Court held that a ship repairman who was injured on a floating platform as it was being towed into place alongside a vessel was a seaman under the Jones Act.  Likewise, in In re Endeavor Marine Inc., 234 F.3d 287, 291-92 (5th Cir. 2000), the court of appeals concluded that an employee who spent nearly all of his 18-month employment term operating cranes on board a vessel, unloading and loading other cargo vessels while the vessel was "moored or in the process of mooring," was regularly exposed to the perils of the sea.  Finally, this Court acknowledged in Baucom v. Sisco Stevedoring, LLC, 2008 WL 313174, at *6 (S.D. Ala. 2008) the seaman status of an employee whose primary responsibility was the operation of a river-based crane barge that was always in the water and which was "routinely" tied off to other vessels and to the dock.  (Baucom also worked, ate, showered and slept aboard the vessel.)  Id.

Gizoni, Endeavor Marine, and Baucom demonstrate that, while it is not

always necessary for an employee's duties to "literally"[11] take him to the sea, a

Jones Act plaintiff must, at a minimum, show that he was exposed to seagoing

perils.  Being towed on vessels and tying and untying vessels to and from a dock or

other vessels may constitute sufficient exposure to seaman harms, even if the work

was performed near or close to shore.  In contrast, Clark has not presented the

Court with any evidence from which a reasonable jury could conclude that he

derives his livelihood from sea-based activities or that his ship repair work exposed

him such perils.[12]  Under Chandris and its progeny, as a matter of law, Plaintiff is

not a seaman because he spent only 9.1% of his time performing Jones Act work.

---

[11]   Since Papai, courts have occasionally interpreted the substantial connection component as not requiring that the employee's duties take him literally "to sea." See In re Endeavor Marine Inc., 234 F.3d 287, 292 & n. 3 (5th Cir. 2000) (district court erred when concluding that employee was not a seaman where his duties "place[d] him on the brown waters of the Mississippi River"); Baucom, 2008 WL 313174, at *6 (plaintiff was "regularly exposed to the perils of sea even though he was not actually 'at sea,'" but docked in "the clear waters of the Mobile River").  The Supreme Court recognized this progression in Stewart, 543 U.S. at 497:

> [I]t seems a stretch of the imagination to class the deck hands of a mud dredge in the quiet waters of a Potomac creek with the bold and skillful mariners who breast the angry waves of the Atlantic; but such and so far-reaching are the principles which underlie the jurisdiction of the courts of admiralty that they adapt themselves to all the new kinds of property and new sets of operatives and new conditions which are brought into existence in the progress of the world.

(quoting Saylor v. Taylor, 77 F. 476, 479 (4th Cir. 1896)).

[12]   "We resolve factual controversies in favor of the nonmoving party, but . . . [w]e do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis in original) (citation omitted).

4.  Commercial Diver Exception

As an alternative theory of relief, Clark has argued that, as a commercial

diver, the Court should consider him to be a seaman as a matter of law.  (Doc. 44 at

11-12) (citing Pettis v. Bosarge Diving, Inc., 751 F. Supp. 2d 1222, 1231 (S.D. Ala.

2010)).  Clark relies on the Fifth Circuit's observation that, with respect a

commercial diver, "[i]t is the inherently maritime nature of the tasks performed and

perils faced by his profession, and not the fortuity of his tenure on the vessel from

which he makes the particular dive on which he was injured, that makes [] a

seaman."  Wallace v. Oceaneering Int'l, 727 F.2d 427, 436 (5th Cir. 1984).  Driving

the court of appeals' analysis was the fact that "[a] diver's work necessarily involves

exposure to numerous marine perils, and is inherently maritime because it cannot

be done on land."  Id.  The same cannot be said of Clark's work, even though he

spent some (approximately 4.5%) of his time working for AMS performing

commercial dives.[13]

Quite simply, to the extent that the Fifth Circuit has carved out a commercial

diver exception, Clark has not come close to proving or averring sufficient facts to

qualify.  See Landry v. Specialty Diving of La., Inc., 299 F. Supp. 2d 629, 635-36

(E.D. La. 2003) (describing cases where commercial diver exception permitted

where injured party spent nearly 100% of his time working, eating and sleeping

---

[13]   Clark's prior employment of approximately three years with a different company as a commercial diver will not suffice to confer him with seaman status either.  See Papai, 520 U.S. at 556-57 ("In Chandris, the words 'particular employer' give emphasis to the point that the inquiry into the nature 'of the employee's duties for seaman-status purposes may concentrate on a narrower, not broader, period than the employee's entire course of employment with his current employer.").

aboard vessels while at sea).  This Court has never recognized that commercial

divers are excepted from the <u>Chandris</u> durational requirement, and it declines to

extend such an exception here.  Therefore, summary judgment is hereby

**GRANTED** as to Plaintiff's Jones Act claim.


## C.  General Maritime Law

Defendant is similarly entitled to summary judgment as to Plaintiff's claims

under the general maritime law.  Because Plaintiff is not a seaman under <u>Chandris</u>,

he cannot bring an action for maintenance and cure and unseaworthiness.  <u>See</u> <u>Doe</u>

<u>v. Princess Cruise Lines, Ltd.</u>, 657 F.3d 1204, 1220-21 (11th Cir. 2011); <u>see also</u>

<u>Baucom v. Sisco Stevedoring, LLC</u>, 506 F. Supp. 2d 1064, 1077 n.21 (S.D. Ala. 2007)

("To qualify as a 'seaman' who may be eligible for maintenance and cure, a claimant

must . . . have a connection to a vessel in navigation that is substantial in terms of

both duration and nature.").


## CONCLUSION

Upon a thorough analysis of all matters presented, the Court concludes that

there is no genuine dispute as to any material fact, and that Defendant is entitled to

judgment as a matter of law because Plaintiff is not a seaman under the Jones Act.

AMS's motion for summary judgment (Doc. 39) is therefore **GRANTED** as to all

claims.

The only matters left pending in this lawsuit are the defendant's purely state law counterclaims of trespass and conversion, which are permissive counterclaims. Because this court has no independent jurisdiction over these claims, they are hereby **DISMISSED.**

**DONE** and **ORDERED** this 1st day of May, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE